MILWAUKEE & CHICAGO R. R. CO., *vs.* HUNTER.

ERROR TO CIRCUIT COURT, RACINE COUNTY.

Heard April 4.]                                    [Decided June 4, 1860.

*Bill of Exceptions—Evidence—Negligence—Trespass.*

A general exception to the entire charge of the judge to the jury, is not sufficiently definite to reverse the judgment for error in the charge, unless the entire charge be also erroneous.

Where the evidence for the plaintiff in an action of trespass in order to make a *prima facie* case, shows that the plaintiff was himself, guilty of negligence which contributed to the injury sustained, then the plaintiff on his own showing, cannot maintain the action, but must be non-suited.

Where the plaintiff shows that an injury has been caused to him by the negligence of the defendant, and his evidence raises no inference of negligence against himself, this would be sufficient to warrant the jury in finding that there was no negligence on his part, and to bring the plaintiff within the rule in *Davis vs. Dressler,* 7 Wis., 527.

In an action against a R. R. Co., it appeared that the company had just raised their track at a crossing of the highway, and had so left the crossing that a loaded wagon would naturally be hindered in crossing the track; that while the plaintiff, who was crossing the track in the night time, was so hindered and delayed with his wagon, the locomotive of the company, without giving any signal of its approach, struck the wagon, and injured the plaintiff; such conduct on the part of the company is sufficient to make out a clear case of negligence on their part, and would warrant the jury in inferring that there was no want of ordinary care on the part of the plaintiff. This rule would be the same even if the plaintiff was driving a colt which balked at the crossing, and which balking might have been attributed to the bad condition of the crossing, as caused by the company.

This was an action commenced by Orlando Hunter, the defendant in error, against the Milwaukee and Chicago Rail-

road Company, to recover damages for personal damages, suffered in consequence of the locomotive and cars of the company running against him, and throwing him from his wagon, to the distance of some 30 feet, through a board fence, and breaking his leg, and for other damages. The declaration was in the usual form, charging negligence in making the proper crossing of the rail road over a public highway, and in not giving any signal of the approach of the train.    The facts of the case can be readily gathered from the opinion of the court.    After all the testimony was in, the court charged the jury as follows:

This action is brought to recover damages for injuries alleged to have been done to the plaintiff, and his property, by coming in collision with the passenger train of the defendant, while passing along a public highway, over the defendant's track, on the evening of the thirteenth of October, 1855. In order to sustain this action, the plaintiff must establish two propositions to your entire satisfaction.

*First*, That the defendant was guilty of negligence, in consequence whereof the damage complained of ensued; and

*Second*, That he, the plaintiff, was free from fault.

These terms I will explain to you, and you will understand them with the qualifications hereinafter given.

At this crossing the rights of the parties were equal.    The plaintiff had a right to an unobstructed passage over the track, and the defendant, with their train, had a right to an unobstructed passage over the highway; the rights of the respective parties to a free and unobstructed passage over the crossing were equal, and the same, in all respects, as would be the right of two persons, in their private carriages, traveling upon two public highways crossing each other, to a free and unobstructed passage over the point of intersection.    The same rules of law must govern in this case, that would govern in that; because both had the right of passage, it did not authorize either to run over or injure the other; both were under equal obligations to exercise ordinary care and diligence to prevent a collision, and would be liable for the consequences of a neglect to use the same.

Ordinary care may be defined to be that degree of care which may reasonably be expected from parties under the particular circumstances of the case, and is synonymous with reasonable care.    There is no distinction between railroads and ordinary highways, in regard to the degree of care which

the same requires on the part of those having the manage-
ment of vehicles upon them. The rule is the same, whether
driven or propelled, on one or the other of these roads, and
where there is an interference, whether one of them crosses
a road of the same or of another kind. The proprietors of
railroads are not excused for a less, or required to exercise a
higher degree of care when about to cross a highway, than if
their's were a common highway ; reasonable care is required
in either case. By this you will not understand that the
same particular preventions, the same preventive measures,
are required in all cases indiscriminately, or, in other words,
that they would constitute reasonable or ordinary care. Such
uniform rule is, from the nature of the case, impossible.
What should be deemed reasonable care, in any given case,
must depend upon the peculiar circumstances of that partic-
ular case. What would be reasonable precautions in some
circumstances, would not be so in others. What would be
reasonable care in driving a vehicle on a broad street, in the
country, might be regarded the greatest carelessness in driving
in the narrow, crowded streets of the city. So what would
be reasonable care in one driving a carriage on an ordinary
road, and about to meet another carriage, coming upon an-
other road, of the same description intercepting it, might, if
that other were a railroad, in consequence of the speed with
which railroads are usually operated, and the comparative
difficulty of controlling them, be considered gross negligence.
What would be considered reasonable care in a farrier, in
driving the nails in shoeing a horse, might be regarded gross
negligence in a surgeon amputating a limb. Reasonable care
must always be understood as a relative term. It means rea-
sonable and proper under all the surrounding circumstances,
and its exercise, in all cases, requires that the precaution
should be proportionable to the probable danger of injury.
*Millard's Charge in Brand vs. S. & T. R. R. Co.*

The exercise of this ordinary care required the plaintiff, as
he approached that crossing, to look out for the cars, and
make use of his eyes, and his ears, and all the usual precau-
tions which a man of ordinary prudence would have made
use of under the like circumstances. If he did not use these
precautions, but rushed thoughtlessly and heedlessly before
the locomotive, reckless of his own life, and the lives of all
those upon the train, and thereby contributed to or caused
the injury complained of, he cannot recover in this action,

however careless or negligent the defendant may have been in their conduct complained of.

On the other hand, the exercise of ordinary care required the defendant, when they laid down or repaired their track across the highway, to have restored the highway to its original condition, as near as might be, so as not to impair its usefulness.

If they raised their track above the surface of the highway, it was their duty to have raised an embankment on the sides, so as to have permitted the safe and easy passage of teams, whether loaded or unloaded, over their track. And in approaching this crossing with their trains, and at a proper distance therefrom, it was their duty to give proper and appropriate signals of their approach, such as ringing their bell, or blowing their whistle, as a warning to those passing upon the public highway, and enable them to escape the danger.

Because the plaintiff suffered a severe injury and great damage in consequence of this collision, it does not necessarily follow that he is entitled to maintain this action, and recover his damages against this defendant. To sustain this action, you must find from the evidence, not only that the plaintiff sustained injury and suffered damage, but that it was caused by the negligence of the defendant.

The obligation to use ordinary care was incumbent upon the plaintiff. The performance of this duty on his part, and the breach of the corresponding duty on the part of the defendant, must concur to entitle the plaintiff to recover. If both parties were in the wrong, by the breach of this duty, neither can recover of the other. The law will not apportion the damages suffered by wrong doers. The general rule is, that a party suffering injury on a highway, in a collision with a railroad train, is entitled to damages, on proof both of the want of ordinary care on its part, and the exercise of the same degree of care on his own part. If, therefore, the plaintiff was himself chargeable with a want of ordinary care, and thereby contributed to the injury complained of, he is without remedy; or, in other words, if you believe, from the evidence, that the injury was produced by the negligence of the plaintiff, or if his default to exercise ordinary care, co-operated with the negligence of the defendant in producing the injury complained of, the plaintiff cannot recover. I have already said to you, that to entitle the plaintiff to recover, he must establish the proposition that he was himself without negli-

gence, and without fault. By this it is not meant that he must be absolutely free from the slightest degree of negligence, but that he must be free from that degree that would amount to a want of ordinary care. The fact that the plaintiff contributed to the injury by his own unlawful act, does not necessarily bar him from a recovery, if there was, on the whole, under all the circumstances of the case, the exercise of ordinary care on his part; or, in other words, if you believe, from the evidence, that there was negligence in this case on the part of both plaintiff and defendant, and that the plaintiff, by the exercise of ordinary care, could have avoided the injury in question, and that he did not exercise such care, and thereby contributed in any degree to the injury, he cannot recover. But if the plaintiff could not, by the exercise of ordinary care, have avoided the injury, the want of such care on his part should not preclude him from a recovery. The negligence of the plaintiff, in order to preclude him from recovering, must be such as that he could, by ordinary care, have avoided the consequences of the defendant's negligence. The rule of liability that attaches to the defendant may be stated in general terms, as follows, to wit:

" The defendant is liable for injuries to persons lawfully on its track through want of ordinary care on the part of its servants. And the limitation is, that the plaintiff must bear his own loss, if, through want of ordinary care, he has contributed to the injury. Negligence is a question of fact for you to find from the evidence, and not to be presumed against either party. And if, after a careful consideration of all the evidence in the case, you are of the opinion that the defendant was guilty of negligence which occasioned the injury to the plaintiff complained of, and that the plaintiff is not guilty of such negligence as contributed to produce the injury, the plaintiff is entitled to recover. And if, from the whole case, you believe he is entitled to recover, you will estimate his damages for the injuries sustained from all the evidence before you."

The defendant below excepted to the charge; and on the coming in of the verdict by the jury in favor of the plaintiff, of $7,000, their counsel moved for a new trial for the following reasons:

1. Because the court erred in permitting testimony of the condition of the crossing to be given under the pleadings of this case, and in permitting any evidence, whatever, to be

Milwaukee and Chicago Railroad Co. vs, Hunter.

given under the first count of the plaintiff's declaration, for the reason that said count contained no allegation that the injury complained of, happened or was caused from the mere negligence of the defendant; or that the plaintiff exercised reasonable care and diligence to avoid the injury.

2. The court erred in admitting testimony that there was no signboard erected at the railroad crossing, or whistling, or ringing post near or adjacent to the crossing where the accident occurred.

3. The court erred in not granting the motion made by defendants for a nonsuit.

4. Because the verdict of the jury is against the law and the evidence given on the trial of said cause, the evidence is insufficient to sustain the verdict.

5. Because the amount of damages found by the verdict is excessive.

6. And, lastly, for the reason of newly discovered evidence.

This motion was overruled and exception taken. And judgment having been rendered upon the verdict, the defendant sued out a writ of error.

*Jason Downer*, for plaintiff in error.

1. The court below erred in overruling the motion for a non-suit. The evidence of the plaintiff below showed that he was guilty not only of a want of ordinary care, but of gross negligence. The evidence proves: 1. That the plaintiff below resided in the neighborhood; was familiar with the crossing, with the condition of the track of the railroad at the time, having crossed it that morning, and frequently before. 2. The engine had brilliant head lights, the night of the accident, and the cars could then be seen and heard at and near the crossing for three-fourths of a mile. 3. The plaintiff below was on a loaded team, which slowly approached the crossing, and was struck by the cars immediately, instantly, after it reached the crossing, and while the plaintiff below was still upon the loaded wagon. 4. The cars were running at the usual speed.

Under such circumstances, we maintain that it is clear, certain, undoubted, that the plaintiff below did not use his eyes and ears; that he did not even think of his approach to the railroad until on it, but was driving carelessly along in a *reverie*, or absorbed in inward thought, and regardless of the outward world; for if he had cast his eyes along the railroad

track, as even the slightest degree of care would have required him to do, as he approached, and before he crossed it, this collision would never have occurred. And all the authorities agree, that if he did not exercise ordinary care he cannot recover, much less. if he was guilty of gross negligence. *Runyon vs. The Cen. R. R. Co.*, 1 Dutch., 558; *Hurtfield vs. Roper*, 21 Wend., 615; *Spencer vs. Utica & Schen. R. R. Co.*, 5 Barb., 337; *Sheffield vs. Rochester & Syr. R. R. Co.*, 21 Barb., 342.

It is well settled, that if the plaintiff, by the exercise of ordinary skill and care, could have avoided the injury, or if his conduct contributed to produce it, that he cannot recover. 9 Foster, 43; 6 Cow., 189; 19 Conn., 571; *Moore vs. R. R. Co.*, 4 Zab., 268. In this last case a large number of English and American decisions are reviewed and commented on.

2. The verdict is against the weight of evidence, and ought to have been set aside on the motion for a new trial.

We are aware that courts with great reluctance set aside verdicts that have any testimony to sustain them. But what facts constitute negligence, or reasonable care, is a question of law for the court. Whether the facts relied on to establish the one or prove the exercise of the other are true, is to be left to the jury. 7 Met., 274; 19 Conn., 571; *Moore vs. Railroad Co.*, 4 Zab., 277. Take all the facts as proved, giving the plaintiff below the benefit of all contradiction and doubts, and the testimony entirely fails to establish : 1. Proximate negligence on the part of the defendant below. 2. Ordinary care on the part of the plaintiff below. But does establish, affirmatively, negligence on the part of Hunter.

3. The court below erred in its instructions to the jury : 1. That if both parties were guilty of negligence ; 2. That if the negligence of the plaintiff contributed to the injury ; And 3. That if he could, by the exercise of ordinary care, have avoided the injury, he could not recover. Then he instructs them that if the plaintiff could not, by the exercise of ordinary care, have avoided the injury, he might recover.

4. The court below erred in overruling the motion for a new trial, by reason of newly discovered evidence. Charles Connor's affidavit sets forth this newly discovered evidence, which is material, and also all the facts which bring it within the rules of law as to newly discovered evidence. See Graham on New Trials, vol. 1, 463, 470, 473, vol. 3, 1023, 1026, and following. The court also erred in overruling the

motion for a new trial, by reason of the admission of improper evidence, and because the verdict was against law and evidence.

*Cary & Pratt,* for the defendant in error.

1. In an action on the case for an injury occasioned by negligence of the defendant, it is not necessary to allege or prove affirmatively that the plaintiff was free from negligence, or that the plaintiff's act in no way contributed to the injury. In the absence of proof there is no presumption of negligence on the part of the plaintiff. *Johnson vs. Hudson River R. R. Co.,* 5 Duer, 21; *Button vs. Hudson River R. R. Co.,* 18 N. Y., 248; *Moore vs. Central R. R. Co.,* 4 Zab., 268.

2. The objection to the testimony as to the condition of the crossing, was without foundation. The declaration states that it was the defendant's duty to put and keep it in repair, and charges that it was not in proper condition and repair, and that in consequence it was difficult to pass and repass said crossing. The condition of the crossing was directly in issue. The natural consequence of its being out of repair was delay and danger in crossing, and was conclusive proof of negligence, which tended to the injury.

3. The fact that the defendant below had neglected to put up a signboard at the crossing, and ringing posts on each side, was proper evidence to go to the jury to show negligence on their part in managing and conducting said road. *Oldfield vs. New York and Harlem Railroad Co.,* 14, N. Y., 310; *Smith vs. New York and Harlem Railroad Co.,* 19, N. Y. 127.

4. The motion for a nonsuit was properly overruled. When there is any evidence of negligence in a case of this kind, the judge is bound to submit the case to the jury, and it would be error to take it from them. But in this case there was not only some evidence of negligence, but it was abundant and conclusive upon that point. *Johnson vs. Hudson River Railroad Co.,* 5 Duer, 21; *Sheffield vs. R. and S. R. R. Co.,* 21 Barb., 339; *Murray vs. R. R. Co.,* 10 Rich., 52.

5. The charge of the judge was proper and a correct exposition of the law on that subject, and fairly submitted the question of fact in the case to the jury. *Brand vs. Sch. and Troy R. R. Co.,* 8 Barb., 368; *Davies vs. Mann,* 10 Mees. & Welsby, 546; Redfield on Railways, 331 to 333, and cases cited; *Carroll vs. N. Y. & N. Haven,* 1 Duer, 571.

There was no valid or sufficient exception taken to the charge, which can be relied on to reverse the judgment, if incorrect. The exception is general to the whole charge. In such a case it is insufficient, if any of the propositions therein contained are correctly stated. There is no dispute but that most of the charge is correct. The exception is therefore not available. *Jones vs. Osgood,* 2 Sel., 233; *Hart vs The Rensselaer R. R. Co.,* 4 id. 37; *Caldwell vs. Murphy,* 1 Kern., 416; *Decker vs. Matthews,* 2 id., 313; *Oldfield vs. N. Y. and Harlem R. R. Co.,* 4 id., 310.

The damages, so far from being excessive, are far below what should have been allowed considering the injuries inflicted; but, small as they are, they have caused the road to run *under cover* ever since judgment was entered, so that the *amount* of the judgment is not a matter of great importance to it. *Oldfield vs. N. Y. & Harlem R. R. Co.,* 14 N. Y. 310.

7. There was no evidence of newly discovered evidence that would authorize the granting of a new trial. The facts disclosed by Conner are of little or no importance and merely cumulative. Reasonable diligence would have discovered them, had they existed before the trial. Such as they are, they are entirely disproved by the affidavits filed by the plaintiff below.

*By the Court,* PAINE, J. The record here shows no exception to the charge of the court below, and we shall therefore examine no questions made as to its correctness. Some question was made as to whether the record here was not mistaken upon that point, but it is conceded that if so, there was only a general exception. But we do not think that would vary it, as it is well settled that a general exception is not sufficient to reverse a judgment for an erroneous charge, unless it is entirely erroneous, which certainly was not the case here.

The principal question is as to the correctness of the ruling refusing to grant a non-suit. Upon that question, the argument for the plaintiff in error concedes that the proof was such as would have warranted the jury in finding negligence on the part of those running the train, which caused the in-

jury.  But it is contended that the law requires the plaintiff in such an action, in  order to make out a *prima facie* case, to show that he himself was not guilty of negligence which contributed to the injury ; and that so far from showing that in this case, the evidence of the plaintiff showed that he was guilty of negligence.  If such is the law, and if such is the plaintiff's own showing the motion for a non-suit should have been granted.

The law is well settled that if the plaintiff in such an action was guilty of negligence which contributed, as a proximate cause, to the injury he cannot recover.  But the point is, how is that to be got at, if such negligence existed, is it to be shown as a defense, or is the plaintiff bound to show in the first instance, that he was not guilty of negligence ?  This point also has been decided and the burden of proof has been held to be upon the plaintiff.  There is certainly a number of authorities that so state the law, and it was so held by this court in *Dressler vs. Davis*, 7 Wis., 527.

I do not propose to enter into a review of these cases.  But my own opinion is, the doctrine as stated by them is not sound upon principle.  It seems to me directly in conflict with another well settled and salutary rule, that negligence is not to be presumed.  And I think the doctrine has grown out of an improper effect given to the case of *Butterfield vs. Forrester*, 11 East, 61, which is the leading case upon the subject. In that case the defendant had placed an obstruction in the road, and the plaintiff rode against it and was injured.  But his own witness, who proved the injury said that he was riding with great violence, and that if he had not been, he might have observed and avoided the obstruction.  The jury were instructed that if the plaintiff by exercising ordinary care might have avoided the obstruction and he did not exercise it, he could not recover, and this was held to be correct.  The court said, " two things must concur to support this

action, an obstruction in the road by the fault of the defendant, and no want of ordinary care on the part of the plaintiff."

Now, I think this case by no means justifies the doctrine in question. The plaintiff's own evidence showed that he was guilty of negligence, and there was no question as to the burden of proof in the case. The remarks of the court were applicable to that case, and amount to no more than this, that a want of ordinary care on the part of the plaintiff will defeat a recovery, and he having shown such want could not recover.

This was no violation of the rule that negligence is not to be presumed; but was only saying that where the plaintiff's own evidence showed his negligence he could not recover, unless by further evidence, he disproved that inference and showed ordinary care. But this does not at all support the conclusion, that where the plaintiff can show an injury to have been caused to him by the negligence of the defendant, and his evidence raises no inference of negligence against himself, that he is bound in order to establish a *prima facie* case, to go further and show that he was not guilty of negligence. Such a rule can only rest upon a presumption of negligence for if the plaintiff's evidence has no tendency to prove any negligence, if he is required to disprove it, it can only be upon the ground that it is presumed.

The plaintiff's negligence seems to me to be as properly matter of defense, as *son assault desmesne,* in an action for an assault and battery. Suppose the case of *Butterfield vs. Forester* had been such an action, and the plaintiff's witness had testified that he first assaulted and struck the defendant, and thereupon the defendant returned the blows which constituted the assault and battery complained of; suppose the court had said the plaintiff could not recover, that two things were necessary to sustain his action, an assault and battery

by the defendant and a want of any justifiable cause on the part of the plaintiff, could such a decision ever have authorized the rule that in all such actions, even where the plaintiff could show an assault and battery, by the defendant, by evidence having no tendency to show any cause on his part, that he was bound to go further, and disprove the commission of any act that would have justified it? I think not, and yet, such a conclusion would be just as well supported as the rule which has been based upon *Butterfield vs. Forrester.* I do not think it rests upon principle, and it must sooner or later be abandoned.

This is clearly indicated by a recent decision of the court of appeals in New York, in the case of *Button vs. The Hudson River R. R. Co.*, 18 N. Y., 248. The action was by a widow, for the negligent killing of her husband by the cars of the defendant. The question was whether the deceased was guilty of negligence. Strong, Justice, after referring to the authorities, and stating the rule that the burden of proof was on the plaintiff to show no want of ordinary care on the part of the deceased, then uses the following language: "It must not be understood that it was incumbent on the plaintiff in the first instance to give evidence for the direct and special object of establishing the observance of due care by the intestate; it would be enough if the proof introduced of the negligence of the defendants, and the circumstances of the injury, *prima facie* established that the injury was occasioned by the negligence of the defendants, as such evidence would exclude the idea of a want of due care by the intestate, aiding to the result. Ordinarily in similar actions, when there has been no fault on the part of the plaintiff, it will sufficiently appear in showing the fault of the defendant, and that it was a cause of the injury; and when it does so, no further evidence on the subject is necessary." Now this seems to me to be saying, that the burden of proof is on the

plaintiff, but that he need not introduce any proof to estab-
lish the fact; that if his evidence does not prove that he was
negligent, that will be sufficient proof that he was not.    At
the end of the case it is stated that " Selden, J., objected to an
implication which he conceived to lurk in the opinion of
Strong, J., but which Strong, J., disclaimed, that in the ab-
sence of proof of any circumstances importing negligence on
the part of the plaintiff, there might be a presumption thereof
which he is required to repel, whereas his negligence is to be
inferred from evidence and is not to be presumed." This
case makes so wide an inroad upon the doctrine, that the
burden of disproving negligence is on the plaintiff, that it
might as well have said that such was not the law.

But conceding the rule to be as stated, if we examine the
evidence offered by the plaintiff at the time when the motion
for a nonsuit was made, upon the principle of the case just
referred to, we are satisfied that the motion was properly over-
ruled.    The evidence showed that the plaintiff was driving
from the east to the west with a heavy load, that he was
driving slowly, as he must from necessity; that there was a
curve in the railroad not far south of the crossing, so that to
see south upon the track to any considerable distance, the
party must be a little east of the crossing; that the cars ap-
proached without any of the usual signals, and ran upon the
plaintiff's wagon at the crossing.    It further showed that the
plaintiff had frequently passed upon the road before, but also,
that on that very afternoon the railroad track had been raised,
and only loose dirt thrown in outside of the rails, so that
the wheels of a loaded team would sink in, and on striking
the rails, would have to accomplish a perpendicular rise of
from six to ten inches.    We are fully satisfied, as well from
the evidence given before the motion for a nonsuit, as from
all that was afterwards offered, that the negligence of the
company on leaving the highway in this almost impassible

condition, was the real cause of the disaster. There was, therefore, a clear case of injury, from the negligence of the defendant, established, and we see no circumstance in the proof, at the time of the motion, tending to prove that the plaintiff failed to exercise ordinary care. The night was dark, and any one who has ever driven in a dark night, even on a road with which he is familiar, will know that he cannot always tell his exact locality. And it certainly cannot be required as a legal rule, however wise it may be to exercise extraordinary precautions, that a man thus travelling, even though he knows that he has to cross a railroad, should get out and feel his way along on foot; and that in default of some such course, the cars may run over him at the crossing with entire impunity, without giving any notice of their approach. We are satisfied also that the jury would have been warranted in inferring from the evidence, that the plaintiff did not drive upon the crossing when the cars were in the immediate vicinity, as was urged by the counsel for the company. Markley testified that he heard both wagons before he heard the train. One was already west of the crossing, and the other, which was the plaintiff's, was approaching it. There was testimony that the noise of the train could be heard at a great distance; that circumstance was strongly relied on by counsel, to show the negligence and inattention of the plaintiff. But we infer from it, that at the time the plaintiff drove against the track, the cars were at some distance off, that he was delayed by the difficulty of crossing, and that during the excitement and exertion consequent upon finding himself in such a situation, his attention was so fixed upon his endeavor to extricate himself, that he did not observe the approaching train, which neglected to give any signals. The noise of the wheels, and the horses' hoofs rattling upon the rails and plank, might, while in that situation, have prevented him from noticing the ordinary sound of approach-

ing cars.   But it seems absolutely impossible that both he and his father should have failed to hear the cars, unless they were both deaf, if they were so near immediately before they struck the railroad, that the wagon, if not delayed, could not have crossed without being hit.   We are satisfied that the wagon was delayed at the crossing, and that it is highly probable that if the proper signals had been given, the plaintiff and his father might have been able to leave the wagon in time for the latter to have saved his life, and the former to have escaped the serious injury that was inflicted upon him. We think, therefore, it was a clear case of negligence in the defendants, and that upon the rule laid down by the New York court of appeals, the jury would have been warranted in inferring that there was no want of ordinary care on the part of the plaintiff.

Nor do we think the evidence afterwards offered was of such a character as to require us to reverse the judgment for the refusal of the court below to grant a new trial, because the verdict was against evidence.   There were some admissions by the plaintiff, to the effect that he did not think of the railroad till he struck the track, &c., but these were made immediately after the injury, when his body was in a mangled condition, and his statements were in reply to the inquisitive agents of the company, and must of necessity have been broken, disjointed, and without any attempt on his part to give a connected statement of the facts.   All the objections to the character of admissions as evidence, apply with double force to those here offered.

The whole matter was left to the jury under a charge, to which, in its general scope, the company certainly could make no objection.   They have passed upon it, and we are satisfied with their verdict.

And we do not think the newly discovered evidence was of such a character as would justify the granting of a new

trial.   It consisted  simply in a statement  made by the plain-tiff, under the same  circumstances  in which the  others were made, that " if his colt  had not baulked it would have been all well enough."   If his horse had baulked, we do not think this should  prevent his  recovery, if the approaching train negligently failed to give any  signal so  that he  might have saved himself.   And although  the driving of  a horse known to be of that  disposition, might, under  some  circumstances, amount  to culpable negligence, yet we think there was noth-ing in the admission of the plaintiff as sworn to,  that would show such to have been  the case here.   On the  contrary, it shows that it was a young horse, whose habits were not con-firmed, and the jury would have been  well warranted in find-ing  that it baulked from inability to raise a  heavy  load over the track in the condition in which  the  company had  left it.

The other parts of the affidavit are as to admissions of the same character  as those referred to,  and liable to  the same objections.

Nor do we think  the  court  erred in admitting evidence of the condition of the track immediately after the injury.   It is true, the question for the  jury was, what was its condition at the time.   But where  that is the  question  with reference to any particular thing, its condition immediately before and im-mediately after are proper  circumstances to be considered.

Upon the whole, we think the judgment must be affirmed, with  costs.